## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Leila Kasso, | Case No. 0:23-cv-2777 (KMM/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Police Officers' Federation of Minneapolis, | |
| Defendant. | |

In this *pro se* action, Plaintiff Leila Kasso alleges civil rights violations, defamation, and a breach of the duty of fair representation against Defendant Police Officers' Federation of Minneapolis ("Federation"). Ms. Kasso's claims arise from the loss of her job with the Minneapolis Police Department ("MPD") and her assertion that the Federation discriminated against her, defamed her, and did not properly represent her as one of its union members. Ms. Kasso is also suing the city of Minneapolis for employment discrimination, having filed lawsuits in Hennepin County, *see Kasso v. City of Minneapolis*, 27-cv-23-1136, and in this Court, *see Kasso v. City of Minneapolis et al*, 23-cv-02782. Before the Court is the Federation's Motion to Dismiss the Amended Complaint or in the Alternative Motion for a More Definite Statement. ECF 37. For the reasons that follow, the Court will **GRANT** the Federation's motion, dismissing some of Ms. Kasso's claims and ordering Ms. Kasso to file a more definite statement along certain, specific grounds.

## I. Background

Ms. Kasso was an MPD patrol officer for at least 10 years. *See* Amended Complaint[1] ("Am. Compl."), ECF 27 at 3–4 (describing some aspects of her work history dating back at least to 2008). In May 2018, Ms. Kasso alleges that she suffered some kind of an accident while on bicycle patrol. *Id.* at 3; *see id.* at 7 (alleging that she suffered a "syncopal episode"). Although it is not entirely clear from the Amended Complaint, Ms. Kasso appears to have been injured badly enough in the accident that she took (or was placed on) a leave of absence afterward. *See id.* at 3–4 (alluding to FMLA medical leave, discussing rehabilitation, and so forth); *but see id.* at 7 (discussing an "involuntary unpaid leave of absence"). Later, when Ms. Kasso wished to return to work, she alleges that she was repeatedly ignored and/or rebuffed by an officer in charge of her reinstatement (identified in the Amended Complaint as Eric Hagle). *Id.* at 4; *see also id.* at 6 (alleging that she "attempted to return to work on at least 10 separate occasions"). Although the details are again somewhat vague, Ms. Kasso eventually concluded that she would not be permitted to resume her position as an MPD officer. This much is certain because Ms. Kasso alleges that in August of 2018, "[a] complaint was filed with the Minneapolis Civil Rights Unit" to "report the refusal of reinstatement with reasonable accommodations" in violation of the Americans with Disabilities Act. *Id.* at 4.

---

[1] Ms. Kasso filed the Amended Complaint in response to an earlier motion to dismiss by the Federation. Ms. Kasso's Original Complaint ("Orig. Compl.") (ECF 1) was filed on September 8, 2023.

What else Ms. Kasso alleges occurred in and around the time she was fighting for reinstatement, and what she specifically alleges against her former union, is less clear. For example, Mr. Hagle is alleged to have "sent an e-mail on City of Minneapolis servers advising [that] the plaintiff caused the accident by having alcohol withdrawals and using illicit substances." *Id*. at 5. This presumably refers to the bike accident, and Ms. Kasso is presumably alleging that Mr. Hagle sent an e-mail to unidentified recipients blaming her for her own accident. But these are merely the Court's assumptions.

Ms. Kasso also alleges that Mr. Hagle "and other police officers made false claims [that] the plaintiff suffered seizures to serve as a disbarment from patrol duties." *Id*. at 6. Again, the Court assumes that Ms. Kasso is alleging that other officers were spreading lies about a medical condition to suggest it was the cause of her bike accident. Ms. Kasso further alleges that Mr. Hagle was aware of blood tests that failed to show the presence of alcohol or illicit substances, presumably around the time of her accident, *see id*. at 5, and that Mr. Hagle made his statements about seizures despite knowing that she "did not suffer epilepsy or a seizure disorder," *id*. at 6. In summary, the Court assumes that Ms. Kasso is alleging that other officers spread lies about substance abuse and/or medical conditions being the reason for her accident, despite knowing, or having reason to know, that neither was a contributing factor. To be sure, Mr. Hagle is not identified in the Amended Complaint as having any kind of capacity or role with the Federation, but the significance of his alleged statements (and the statements of other officers) appears to be that Ms. Kasso asserts they were untruthful and that the Federation was aware of them. *Id*.

3

Elsewhere, Ms. Kasso alleges that "[o]n or about 2019, Bob Kroll," identified by Ms. Kasso elsewhere in the Amended Complaint as being the Federation president at the time of her accident, "was notified by the plaintiff that the city of Minneapolis terminated [her] Medica health insurance [but Mr. Kroll] refused to assist on e-mail." *Id*. The Court presumes that the termination of Ms. Kasso's insurance was related to her termination as an officer, and that her allegations naming and involving Mr. Kroll are intended to demonstrate her union's alleged failure to assist her in gaining reinstatement or to otherwise assist her in an employment dispute with the MPD. Ms. Kasso also makes allegations concerning other officers' medical leave challenges, including those of white men and women, that did not result in termination and where the Federation is alleged to have advocated for their members to be reinstated. *See id*. at 9. The Court assumes that these allegations are made to substantiate Ms. Kasso's allegations of disparate treatment compared with other officers and in particular white officers. Ms. Kasso identifies herself in the Amended Complaint as a black woman. *See, e.g., id*. at 11.

These allegations concerning Mr. Hagle and Mr. Kroll are representative of the Amended Complaint as a whole, which frequently intermixes alleged conduct by city of Minneapolis employees (*i.e.*, Mr. Hagle) with alleged conduct by union officials (*i.e.*, Mr. Kroll) arising out of the bicycle accident and reinstatement dispute. Elsewhere, the Amended Complaint also features narrative allegations that are more attenuated from Ms. Kasso's accident and are of less obvious relevance to her causes of action. For example, Ms. Kasso describes both lurid and unprofessional conduct by members of the MPD that did not result in terminations, and the Federation is alleged to have zealously represented

4

those officers despite the conduct. *See, e.g., id*. at 10–11. She also makes further allegations about Mr. Hagle and his supervisors and allegations about other officers' conduct toward her that pre-dates the bike accident. *See id*. at 6–7 (alleging that Mr. Hagle's "supervisors failed to properly supervise him"; that the "city of Minneapolis failed to designate an ADA specialist to ensure employees are able to return from work . . ."; and that she was "repeatedly defamed and humiliated" on the job in 2017 and 2018). The Court construes these types of allegations as being made to substantiate a thematic allegation about a malignant culture within the MPD and Federation, generally.

The Court identifies at least three potential causes of action in the Amended Complaint: 1) violation of Title VII of the Federal Civil Rights Act; 2) common law defamation; and 3) breach of the Federation's duty of fair representation to her, pursuant to the Labor Management Relations Act ("LMRA"). The Federation seeks dismissal of the entire Amended Complaint, alleging that Ms. Kasso has failed to state a claim for which she is entitled to relief. As to any Title VII claim, the Federation first argues that Ms. Kasso has failed to properly exhaust administrative remedies and/or has attempted to introduce Title VII allegations against the Federation that were not contained in her prerequisite administrative filings. *See* ECF 38 (Def's Mem. in Supp. of Mot. to Dismiss) at 8. As for the common law claims, the Federation argues that both are barred by the statute of limitations. *Id*. at 11–15. In the alternative, the Federation asks this Court to order Ms. Kasso to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *Id*. at 16. Specifically, the Federation asks this Court to order Ms. Kasso to file a new complaint that complies with the formatting requirements of the Federal Rules of Civil

5

Procedure and the Local Rules and that otherwise provides a more "reasonable recitation of the claims that Plaintiff is asserting against them, and the legal bases for each of those claims." *Id*. at 17 (quoting *Gacek v. Owens & Minor Distribution, Inc.*, No. 09-cv-3202 (PAM/RLE), 2010 WL 11534509 (D. Minn. February 3, 2010). In response, Ms. Kasso filed an opposition to the pending motion. *See ECF* 45 (Pl's Opp. to Mot. to Dismiss). However, Ms. Kasso's opposition, which is 65 pages long, does not appear to specifically address the Federation's arguments for dismissal, and Ms. Kasso mostly uses her brief to reassert and/or substantiate allegations set forth in the Amended Complaint. *See generally id*.

## II. Legal Standards

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of detailed factual allegations in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). Furthermore, as a *pro se* litigant, Ms. Kasso's complaint is given "liberal

construction." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("'When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'") (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### B.  Motion for More Definite Statement

"A party may move for a more definite statement of a pleading which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Because of the liberal notice-pleading standard governing federal pleadings 'and the availability of extensive discovery, Rule 12(e) motions are disfavored.'" *Jackson v. Minnesota Dep't of Human Servs.*, No. 20-cv-749 (ECT/TNL), 2020 WL 4572066, at *2 (D. Minn. Aug. 7, 2020). "Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996) (citation omitted). "When examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading." *Lyon Fin. Servs., Inc. v. MBS Mgmt. Servs., Inc.*, No. 06-cv-4562 (PJS/JJG), 2007 WL 2893612, at *9 (D. Minn. Sept. 27, 2007). "A Rule 12(e) motion is properly granted where the allegations are so vague or unintelligible that no reasonable response can be expected." *Williams v. Howard*, No. 20-cv-0439 (NEB/BRT), 2021 WL 165114, at *1 (D. Minn. Jan. 19, 2021) (quoting *Lyon Fin. Servs.*, 2007 WL 2893612, at *9) (internal quotation marks omitted).

### III.  Discussion

As noted above, the Court has liberally construed Ms. Kasso's *pro se* Amended Complaint to assert three causes of action against the Federation. The Court will analyze each of these claims in turn.

### A. Title VII

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similar conditions are placed on unions. *Turner v. Otis Elevator Co.*, No. 21-cv-00203 (SRN/ECW), 2022 WL 270885, at *7 (D. Minn. Jan. 28, 2022) ("It is also forbidden for a labor organization to 'exclude or expel from its membership, or otherwise to discriminate against,' an individual based upon that individual's race.") (quoting 42 U.S.C. § 2000e-2(c). "It is undisputed that Congress intended Title VII to cover labor unions." *Peltonen v. Branch No. 9*, No. 05-cv-605 (DWF/JSM), 2006 WL 2827239, at *24 (D. Minn. Sept. 29, 2006) (quoting *Dowd v. United Steelworkers of America, Local No. 286*, 253 F.3d 1093, 1099 (8th Cir. 2001) (internal quotation marks omitted). "[A] plaintiff may bring an action under Title VII . . . if his union, for discriminatory reasons, breaches its duty to represent him fairly in the handling of his complaints and grievances." *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1053 (8th Cir. 2002).

"Under Title VII, a plaintiff must 'provide the EEOC the first opportunity to investigate discriminatory practices and enable it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" *Ringhofer v. Mayo Clinic, Ambulance*,

8

102 F.4th 894, 898 (8th Cir. 2024) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (cleaned up). As such, "[a] plaintiff may not assert a claim under Title VII unless she has filed a timely charge with the EEOC and . . . the EEOC issues a notice, commonly called a right-to-sue letter." *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997) (citing 42 U.S.C. §§ 2000e–5(e)-(f) and *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974)); *see also Soboyede v. KLDiscovery*, No. 20-cv-02196 (SRN/TNL), 2021 WL 1111076, at *3 (D. Minn. Mar. 23, 2021) (quoting *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim. . . .") (internal brackets omitted).

The Federation argues that Ms. Kasso's Title VII claim against it fails for at least two reasons. First, the Federation argues that Ms. Kasso did not articulate the present claims against it when she filed a charge with the EEOC, and therefore she has not exhausted her administrative remedies for this lawsuit. *See* ECF 38 at 7 (stating that the "actual charge filed with the [Minnesota Department of Human Rights] and the EEOC did not contain any allegations against the Federation"); *id.* at 6 ("Plaintiff is barred from alleging Title VII violations against the Federation without first filing with the EEOC."). More generally, the Federation argues that Ms. Kasso's claims are directed toward an allegedly discriminatory action taken against her by the MPD and city of Minneapolis, for which the Federation disavows any responsibility. *Id.* at 6 ("[A]ssuming arguendo that Plaintiff has met the Rule 8 threshold to survive a motion to dismiss, the allegations of wrongdoing are against the City rather than the Federation.").

9

Working backward, the Court disagrees that Ms. Kasso has not articulated allegations of wrongdoing specific to the Federation in her Complaint. Ms. Kasso makes numerous allegations against the Federation, mostly concerning actions taken or not taken by Mr. Kroll that, if true, would be relevant to a potential Title VII claim based on discriminatory representation by a union. Whether these allegations are enough to state a prima facie case of Title VII discrimination against the Federation is not clear, and a question the Court declines to resolve at this time, given ambiguity around the exhaustion requirement, discussed below.

As to the Federation's argument that Ms. Kasso has not exhausted (or at least not properly exhausted) her administrative remedies before suing, the Court concludes that the Federation has reasonably articulated a need for a more definite statement from Ms. Kasso. To be sure, it is not Ms. Kasso's burden to prove exhaustion at the pleading stage. Failure to exhaust administrative remedies is an affirmative defense to a Title VII claim that a defendant must plead and prove. *See Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007). Only where the plaintiff's failure to exhaust is apparent from the face of the complaint is dismissal under Rule 12(b)(6) appropriate. *See, e.g.*, *Agnew v. Brands*, No. 4:21-cv-01222-LPR, 2023 WL 2164194, at *3 n.26 (E.D. Ark. Feb. 22, 2023). Indeed, in Ms. Kasso's Original Complaint, she clearly states that she first filed a claim of discrimination against the Federation before suing in federal court. *See* Orig. Compl. at 3 (stating that she filed the charge on Sept. 1, 2019). However, attached to that same Original Complaint, Ms. Kasso included a copy of a charging document, filed with the Minnesota Department of Human Rights ("MDHR"), naming the City of Minneapolis, and alleging

10

*employment discrimination*. *See* ECF 1-2 at 1–3. At the end of the document attached to the Original Complaint, Ms. Kasso included what appears to be an addendum, detailing "labor organization discrimination and reprisal" allegations. *Id*. at 5. It is unclear from the Original Complaint, or the attached documents, whether this addendum was included in the original MDHR charge against the city or any other charge filed with the MDHR. To further confuse matters, in attempting to show that Ms. Kasso deliberately included incorrect[2] paperwork in her Original Complaint to create the appearance of exhaustion against the Federation, the union submitted a declaration to the Court, which includes a *different* MDHR charging document, also apparently made by Ms. Kasso. This document, which does name the Federation as the charged party and is dated Sept. 24, 2019, alleges labor organization discrimination on its face and includes at least some details that go toward discrimination in union representation. *See* Ex. 1, Kelly Decl. (ECF 22-1) at 1, 3 (bottom two paragraphs alleging representation failures). In Ms. Kasso's Amended Complaint, the Court can discern nothing relevant to whether she asserts she has exhausted *vis-a-vis* the union.

---

[2] The Federation comes close to outright accusing Ms. Kasso of doctoring paperwork for her Complaint. *See* ECF 38 at 2 ("By inserting a separate page with allegations against the Federation in ECF Doc No. 1-2, at 5, Plaintiff has knowingly misrepresented a document claiming it was submitted to the EEOC and the MDHR."). Ms. Kasso did not address this accusation in her opposition brief to the motion to dismiss. Because the Federation does not clearly request the Court to do anything specific about this purported misrepresentation, and because the Court is largely granting the Federation's motion otherwise, it declines to weigh in on the Federation's accusations about the provenance of Ms. Kasso's documents.

Given all of the above, the Court concludes that the best course of action is to order a more definite statement pursuant to Rule 12(e). Again, Ms. Kasso is not required to prove exhaustion of remedies to plead a case of Title VII discrimination against the union in any subsequent pleading she chooses to file. But here, the Court has an allegation by Ms. Kasso that she has exhausted as to the Federation in one complaint, no allegation to that effect in a second complaint, all paired with documents submitted by both parties outside the pleadings that create confusion about who has been administratively charged with what before the filing of this lawsuit. This, alongside the fact that the Amended Complaint dwells heavily on allegations of employment discrimination against the MPD and the city of Minneapolis, creates a lack of intelligibility as to whom Ms. Kasso believes is liable to her and on what basis she believes they are liable. In this sense, the Court agrees with the Federation that it is unable to properly frame its legal defenses based on the current pleadings.

The Court therefore orders Ms. Kasso to file a Second Amended Complaint ("SAC") in which she must: 1) clearly and concisely allege whether she filed a charge of discrimination with the MDHR and/or EEOC against the Federation and received her right-to-sue letter[3]; 2) clearly and concisely allege the facts that she believes are relevant to her distinct claims against the Federation, if any. To be sure, Ms. Kasso may include any factual allegations in her SAC that she believes are relevant to her Title VII case against the Federation, but she is encouraged to avoid excessive discussion of alleged employment

---

[3] Ms. Kasso is not required to attach documentation to her pleadings but may do so if she wishes.

discrimination by the MPD and city of Minneapolis that is the apparent subject of other lawsuits. Furthermore, Ms. Kasso must comply with the requirements of the Federal Rules in filing her SAC, meaning specifically that Ms. Kasso should refrain from long, narrative paragraphs containing multiple allegations each and instead use individually numbered paragraphs to state her allegations. *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Finally, Ms. Kasso must clarify in the SAC whether she intends to assert any causes of action against the Federation other than those construed by the Court and addressed in this Order.

Ms. Kasso must file her SAC, or request additional time for doing so, no more than 30 days after the date listed on the final page of this Order. Failure to file a SAC may result in the dismissal of this lawsuit in its entirety.

### B.  Defamation and Breach of Duty of Fair Representation

Next, the Federation argues that Ms. Kasso's defamation and breach of duty of fair representation claims are barred by their applicable statutes of limitation. Like an exhaustion defense, discussed above, "[t]he statute of limitations is an affirmative defense that a defendant must plead and prove . . . and hence questions regarding timeliness generally must be resolved by a motion for summary judgment rather than a motion to dismiss." *Hile v. Jimmy Johns Highway* 55*, Golden Valley*, 899 F. Supp. 2d 843, 847 n.6 (D. Minn. 2012). However, "[a] defendant may raise a statute-of-limitations defense on a motion to dismiss, and the motion should be granted when it 'appears from the face of the complaint itself that the limitation period has run.'" *Sacks v. Univ. of Minnesota*, 600 F.

Supp. 3d 915, 938 (D. Minn. 2022) (quoting *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). According to the Federation, both Ms. Kasso's defamation and breach of duty of fair representation claims are facially barred by the allegations in her own Amended Complaint and therefore moves for dismissal of both. For the following reasons, the Court will grant the motion with respect to both claims.

1. **Defamation**

"Defamation is a common-law claim" under Minnesota law. *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 711 (D. Minn. 2015), *aff'd,* 652 F. App'x 479 (8th Cir. 2016) (citing *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 327–28 (Minn. 2000). Common law claims under state law are "of course, governed by the applicable state law limitations period, even when such a claim is heard in federal court." *Id*. (quoting *Firstcom, Inc. v. Qwest Commc'ns*, 618 F.Supp.2d 1001, 1010 (D. Minn. 2007), *aff'd sub nom. Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669 (8th Cir. 2009). Under Minnesota law, "defamation claims . . . are subject to a two-year statute of limitations." *Clobes v. NBCUniversal Media, LLC*, No. 21-cv-2117 (PJS/JFD), 2023 WL 2246755, at *1 (D. Minn. Feb. 27, 2023) (citing Minn. Stat. § 541.07(1)). The clock begins to run "when the defamatory matter is published to a third party." *Id*. (quoting *Wild v. Rarig*, 234 N.W.2d 775, 794 (Minn. 1975)). "Lack of knowledge of a defamatory publication will not toll the statute of limitations." *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 728 (D. Minn. 2015), *aff'd,* 652 F. App'x 479 (8th Cir. 2016).

Here, Ms. Kasso's defamation claims against the Federation are clearly barred. Ms. Kasso makes allegations about conduct that occurred between 2018 and 2020. This is stated

explicitly on the first page of her Amended Complaint, *see* Am. Compl. at 1 (describing conduct occurring "[o]n or about 2018, 2019, and 2020"), and it is reiterated throughout the Amended Complaint through allegations about events that occurred at and around the time of Ms. Kasso's termination. There is no mention in the Amended Complaint of any occurrence of any kind occurring after 2020. Simply put, the Court concludes that all of the conduct relevant to a defamation claim in this case occurred[4] no later than 2020. The Original Complaint in this case was filed in 2023, and by then the statute of limitations had already run. Ms. Kasso's defamation claim is therefore dismissed.

### 2. Breach of Duty of Fair Representation

As a threshold matter, the Court acknowledges that it is unclear whether Ms. Kasso intended to assert a claim for a breach of the Federation's duty to fairly represent her. This claim would arise out of federal law. The LMRA authorizes "[laws]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." 29 U.S.C. § 185. Ms. Kasso makes no mention of this statutory claim in any of her pleadings, but there are some clear overlaps to her Title VII claims against the

---

[4] Anticipating this very conclusion, the Amended Complaint includes legal arguments that the statute of limitations does not apply because the Federation was aware of defamation against her by Mr. Hagle, but that all parties concealed these statements from her. This fails for two reasons. First, this particular statement does not appear to be making a claim of defamation against the Federation, but instead against Mr. Hagle, who is identified in the Amended Complaint as an MPD officer responsible for Ms. Kasso's reinstatement. Second, the statute of limitation on defamation would have begun to run as soon as Mr. Hagle (or anyone) published a defamatory statement to others about Ms. Kasso, and Ms. Kasso's lack of knowledge of the statement did not toll the clock. *Ernst*, 129 F. Supp. at 728.

Federation. *See Muhonen v. Cingular Wireless Emp. Servs.*, LLC, 802 F. Supp. 2d 1025, 1031 (D. Minn. 2011), *aff'd,* 456 F. App'x 610 (8th Cir. 2012) (explaining that "[a] union breaches its duty of fair representation only when its conduct toward a union member is arbitrary, discriminatory, in bad faith, or so unreasonable as to be irrational.") (citing *Vaca v. Sipes*, 386 U.S. 171, 186–87 (1967)). Here, Ms. Kasso makes allegations that can be liberally construed as claims of racial discrimination by the Federation. Because the Federation appears to assume that she intended to state a fair representation claim against it, *see* ECF 38 at 13 ("The Amended Complaint contains some allegations of a breach of the duty of fair representation"), and because Ms. Kasso does not state otherwise in her opposition to the motion to the dismiss, the Court will also assume that the claim is part of her Amended Complaint.

"The statute of limitations for bringing a fair representation claim is six months." *Muhonen*, 802 F. Supp. 2d at 1046 (citing *Scott v. United Auto. Workers*, 242 F.3d 837, 839 (8th Cir. 2001)). "The statute of limitations begins to run when the employee knows or reasonably should have known of the union's alleged breach of the duty of fair representation." *Id*. Thus, unlike with Ms. Kasso's defamation claim, even though Ms. Kasso describes relevant conduct dating back to 2018 through 2020, if Ms. Kasso was unaware of the union's failure to fairly represent her until significantly later, there is at least the possibility that the clock had not run at the time of the Original Complaint. This implicates the precept, discussed above, that "questions regarding timeliness generally must be resolved by a motion for summary judgment rather than a motion to dismiss." *Hile*, 899 F. Supp. 2d at 847 n.6 (D. Minn. 2012).

Here, however, the Federation again believes that the Court can nevertheless apply the statute of limitations and dismiss Ms. Kasso's fair representation claim. ECF 38 at 13. The Court agrees. As with her Defamation claim, Ms. Kasso's fair representation claim is based on conduct that occurred, at the latest, around 2020 when Ms. Kasso alleges she was still seeking union support in her reinstatement efforts. This means that Ms. Kasso would necessarily need to rely upon the argument that she only later became aware of the conduct by her union that allegedly breached its duties of fair representation to her. But while Ms. Kasso has no obligation to *prove* at the pleading stage that her allegations are not bound by the statute of limitations, she has *pleaded* nothing from which the Court could reasonably infer that she only recently learned of conduct relevant to her fair representation claim. To the contrary, her pleadings suggest a contemporaneous understanding and frustration that her union was not assisting her in her efforts to win reinstatement. As such, the Court will also dismiss Ms. Kasso's fair representation claim as being time bound. However, because Ms. Kasso could in theory re-plead facts from which the Court could reasonably infer that she only learned about relevant conduct within six months of filing this lawsuit, the Court's dismissal of this claim is without prejudice.

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendant's Motion to Dismiss the Amended Complaint or in the Alternative Motion for a More Definite Statement (ECF 37) is **GRANTED**;

2. The Motion is **GRANTED** to the extent that Ms. Kasso's Defamation Claim against Defendant is **DISMISSED with prejudice**;

3. The Motion is further **GRANTED** to the extent that Ms. Kasso's Breach of Duty of Fair Representation Claim is **DISMISSED without prejudice**; and

4. The Motion is further **GRANTED** to the extent that Ms. Kasso is **ORDERED** to file a Second Amended Complaint within 30 days, consistent with the requirements of this Order, stated above, or risk the dismissal of her Title VII claim.

Date: September 24, 2024

      *s/ Katherine M. Menendez*
Katherine M. Menendez
United States District Judge