UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leila Kasso, | Case No. 0:23-cv-2777 (KMM/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Police Officers' Federation of Minneapolis, | |
| Defendant. | |

Before the Court is Defendant Police Officers' Federation of Minneapolis's ("Federation") Motion to Dismiss (ECF 59) Plaintiff Leila Kasso's Second Amended Complaint ("SAC" (ECF 58)). For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

I. Background

This case involves allegations of discriminatory and other harmful conduct against Ms. Kasso, a former Minneapolis Police Department ("MPD") officer, by her union, the Federation. The factual allegations of this case were summarized by the Court in a September 2024 Order granting in part a previous motion by the Federation to dismiss Ms. Kasso's First Amended Complaint ("FAC"). *See* ECF 55. In the September Order, the Court dismissed two claims asserted by Ms. Kasso and required her to file a more definite statement as to another of her claims. *See generally id*. The Court also instructed Ms. Kasso that her SAC must comply with the formatting requirements for pleadings in

1

the Federal Rules of Civil Procedure. *Id*. at 12–13. Ms. Kasso filed her SAC on January 5, 2025.

The SAC remedies some of the Court's concerns about Ms. Kasso's earlier pleadings, by providing a somewhat more succinct narrative, using numbered paragraphs, and providing clearer allegations directed specifically toward the Federation.[1] The Court will not summarize all of the SAC's contents here, but instead will focus on those portions of particular importance to her causes of action.

Ms. Kasso is a black woman who worked for the MPD and was a Federation member. *See generally* SAC. Ms. Kasso maintains that in 2018, she "suffered a syncopal episode due in part to dehydration and heavy physical exertion of bicycling while responding to emergency 911 calls for service." *Id*. ¶ 5.5. Ms. Kasso was injured in this episode, and afterward took voluntary leave from her employment "to determine if she actually had a medical illness which would bar her from being a police officer or working behind a desk." *Id*. Following her initial leave period, Ms. Kasso appears to have become embroiled in a prolonged reinstatement conflict with her employer. *See id*. Instead of attempting to help her win reinstatement or otherwise navigate her disputes with the MPD, Ms. Kasso alleges that the Federation undermined her and discriminatorily failed to represent her. For example, Ms. Kasso maintains that she was falsely "labeled" as having

---

[1] A considerable portion of the Federation's prior motion to dismiss focused on the contention that Ms. Kasso, who is suing the city and MPD in a separate lawsuit, had failed to distinguish her claims against the union from her claims against her employer. The SAC still includes considerable discussion of Ms. Kasso's employment dispute, but offers the Court improved clarity about the distinct claims she is making against the Federation.

2

"epilepsy, seizure disorders, and took illicit drugs by both the employer and Federation Representatives." *Id*. She also asserts that "Federation President Sherral Schmid" told her she was required to "heal 100%" before she could return to duty, a statement that Ms. Kasso disputes as inaccurate. *Id*. She alleges that Federation leaders made claims about her medical conditions and alleged drug and alcohol use as a basis for failing to assist her in gaining reinstatement. *Id*. ¶ 5.3. And she alleges that this conduct is in contrast to the Federation's "selective[]" assistance of "White male Union members" who commit serious misconduct or similarly suffer from medical situations that impair their ability to work. *Id*.

The Federation asks this Court to dismiss the entirety of Ms. Kasso's SAC. First, the Federation maintains that Ms. Kasso's claims are still fundamentally about job assignments and promotional opportunities and therefore appropriately directed toward the City of Minneapolis and the MDP. *See* ECF 60 (Mem. in Supp. of Mot. to Dismiss) at 1. Second, the Federation maintains that whatever claims are asserted against it are time barred. *Id*. The Federation also complains that Ms. Kasso's SAC fails to comply with the requirements of Federal Rule of Civil Procedure 8, which among other things mandates "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And in the alternative, the Federation asks the Court to once more require Ms. Kasso to provide a more definite statement under Rule 12(e). *Id*. at 12–14.

3

## II. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss,[2] a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of detailed factual allegations in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Waters v. Midson*, 921 F.3d 725, 734 (8th Cir. 2019). Furthermore, as a *pro se* litigant, Ms. Kasso's complaint is given "liberal construction." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

---

[2] As noted, the Federation asks this Court in the alternative to order Ms. Kasso to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). As explained below, the Court concludes that Ms. Kasso has stated a viable claim of Title VII discrimination under Rule 12(b) and that this claim provides the Federation with a sufficiently clear articulation of these allegations. Because the Court dismisses the remainder of Ms. Kasso's claims, it declines to resolve whether any of these satisfy the requirements of Rule 12(e).

4

## III. Discussion

The Court liberally construes Ms. Kasso's SAC as asserting the following causes of action:[3] Title VII discrimination; breach of the duty of fair representation; breach of contract; negligence; and fraud. The Court analyzes each in turn.

### Title VII

The central allegation of Ms. Kasso's SAC is one of unlawful discrimination against her by the Federation under Title VII of the Civil Rights Act. This claim was also included in her FAC and has now been repleaded. For the reasons that follow, the Court concludes that Ms. Kasso adequately states a claim.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similar conditions are placed on unions. *Turner v. Otis Elevator Co.*, No. 21-cv-00203 (SRN/ECW), 2022 WL 270885, at *7 (D. Minn. Jan. 28, 2022) ("It is also forbidden for a labor organization to 'exclude or expel from its membership, or otherwise to discriminate against,' an individual based upon that individual's race.") (quoting 42 U.S.C. § 2000e-2(c)). "It is undisputed that

---

[3] The Federation maintains that Ms. Kasso has also attempted to assert a claim against it under the Americans with Disabilities Act of 1990. ECF 60 at 1. While Ms. Kasso certainly discusses her disability status in the SAC and references the act, the Court does not find that she is actually alleging that the Federation violated the ADA. Instead, the Court construes that SAC as asserting discrimination claims against the Federation, including disability discrimination, arising under Title VII only.

Congress intended Title VII to cover labor unions." *Peltonen v. Branch No. 9*, No. 05-cv-605 (DWF/JSM), 2006 WL 2827239, at *24 (D. Minn. Sept. 29, 2006) (quoting *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1099 (8th Cir. 2001) (internal quotation marks omitted). "[A] plaintiff may bring an action under Title VII . . . if his union, for discriminatory reasons, breaches its duty to represent him fairly in the handling of his complaints and grievances." *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1053 (8th Cir. 2002).

"To establish a prima facie case of race-based discrimination under Title VII, a plaintiff must show that '[s]he is a member of a protected group; [s]he was qualified for [her] position; [s]he suffered an adverse employment action; and the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Otis Elevator Co.*, 2022 WL 270885, at *7 (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011)). But before making her case in federal court, "a plaintiff must 'provide the EEOC the first opportunity to investigate discriminatory practices and enable it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994)) (cleaned up). As such, "[a] plaintiff may not assert a claim under Title VII unless she has filed a timely charge with the EEOC and . . . the EEOC issues a notice, commonly called a right-to-sue letter." *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997) (citing 42 U.S.C. §§ 2000e–5(e)-(f) and *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47

6

(1974)); *see also Soboyede v. KLDiscovery*, No. 20-cv-02196 (SRN/TNL), 2021 WL 1111076, at *3 (D. Minn. Mar. 23, 2021) (quoting *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005)) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim. . . .") (internal brackets omitted).

In its previous Order addressing the Federation's motion to dismiss Ms. Kasso's FAC, the Court addressed the threshold question of whether Ms. Kasso had adequately[4] exhausted her administrative remedies before filing this suit. In particular, the Court wrestled with considerable uncertainty about whether Ms. Kasso was alleging that she had filed an EEOC charge against the Federation. *Id*. at 11–12. In addition, the Court noted that Ms. Kasso had attached EEOC documents related to a charge against the city, while the Federation had attached what appeared to be an EEOC filing against the Federation, made by Ms. Kasso. *Id*. Given this general state of confusion, the Court ordered Ms. Kasso to file her SAC with "clear and concise[]" allegations about whether she filed a charge of discrimination against Federation and received her right-to-sue letter. *Id*. at 12.

The Federation now asserts that Ms. Kasso has failed to make such a clear and concise allegation and that her Title VII claim must be again dismissed. The Court disagrees. While the SAC still suffers from some of the vagueness and digression that were

---

[4] The Court previously noted that it was not Ms. Kasso's burden to prove exhaustion at the pleading stage, an observation that it now reiterates. Indeed, failure to exhaust administrative remedies is an affirmative defense to a Title VII claim that a *defendant* must plead and prove. *See Miles v. Bellfontaine Habilation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007).

7

noted about the FAC, Ms. Kasso has now at least firmly alleged that she filed an EEOC charge against the Federation. *See* SAC ¶ 5.5. Specifically, Ms. Kasso proffers that such EEOC documents were filed by an attorney named "Elizabeth Bincek." *Id*. An attorney named "Elizabeth Binczik" is indeed the signatory on the EEOC paperwork that the Federation itself has submitted in this case. *See* Ex. 1, Kelly Decl. (ECF 22-1) at 3. And as the Court previously noted and now reiterates, the EEOC charge that names the Federation makes several unambiguous allegations of discriminatory failures in union representation, which were sufficient to put the Federation on notice about Ms. Kasso's distinct claims against it. In all, this will suffice at the pleading stage to establish exhaustion as to the Federation. To the extent that the Federation wishes to raise additional exhaustion issues in this case, it may do so after the benefit of discovery.

Moving on to Ms. Kasso's prima facie case, the Court also finds that her amended pleadings are sufficient to state a claim. Although the SAC is long and at times unclear, in several places Ms. Kasso makes a plain and concise allegation about the discrimination she suffered. And contrary to the Federation's arguments that Ms. Kasso is overwhelmingly complaining about conduct attributable to the city and/or MPD, the Court finds that her pleadings make claims of discrimination against the Federation that are distinct from her employee/employer dispute. Most specifically, Ms. Kasso alleges that between 2018 to 2020, the then-president of the Federation and others made untrue claims about the nature of a medical episode she suffered, as a basis for "fail[ing] in assisting" her in a prolonged reinstatement dispute she had with the MPD. SAC ¶ 5.3. She likewise alleges that the union

8

"selectively assists" white, male members who commit "criminal acts, ethical infractions, use of force infractions, dereliction of duty," or who have serious medical illnesses that impact their ability to work. *Id*. Ultimately, the Court construes these allegations as a straightforward claim that the Federation both undermined her employment with the MPD after a medical episode and then failed to assist her in re-securing her employment in the manner it would have done for a white, male officer—even one facing far more serious employment disputes. These allegations state a claim for race and sex discrimination under Title VII.

The Federation urges this Court to nevertheless dismiss Ms. Kasso's Title VII claim because it is time barred. The Court agrees with the general principle that Title VII imposes important timing requirements on plaintiffs—both in terms of when an initial EEOC charge must be made in relation to allegedly discriminatory conduct, *see* 42 U.S.C. § 2000e–5(e)(1), and in terms of when a plaintiff must file suit after receiving a right-to-sue notice from the EEOC, *see* 42 U.S.C. § 2000e–5(f)(1). However, the Federation's arguments are unavailing for two reasons. First, the Court will not adjudicate the exact boundaries of any time bar that applies to Ms. Kasso's Title VII claims on this motion to dismiss. Again, such questions of administrative exhaustion invoke an affirmative defense that a defendant must plead and prove. *Cf. Weatherly v. Ford Motor Co.*, 994 F.3d 940, 942–44 (8th Cir. 2021) (reversing limitations-based dismissal of FMLA claims because plaintiff's complaint itself did not establish the applicability of the timeliness defense). Second, even if the Federation is exactly correct about the time window that applies to Ms. Kasso claim, this would not

require dismissal. According to the Federation, Ms. Kasso's EEOC charge can only embrace discriminatory actions that occurred between, roughly, November 2018 and September 2019. But this time period significantly overlaps with Ms. Kasso's central allegations against the Federation in her SAC. *See* SAC ¶ 5.3 (alleging conduct that occurred between 2018 to 2020). The Federation is certainly entitled to narrow the contours of this lawsuit to conform with the timing requirements of Title VII, but that narrowing will occur upon completion of discovery and at summary judgment or trial.

## Breach of Duty of Fair Representation

Ms. Kasso claims that the Federation also breached its "duty of fair representation." *See* SAC ¶¶ 4, 4.3. For the following reasons, this claim is dismissed.

In its prior dismissal Order, the Court addressed the sufficiency of this claim in Ms. Kasso's FAC. *See* ECF 55 at 15–17. In addition to making a Title VII claim, the Court construed the FAC as invoking the Labor Management Relations Act ("LMRA"), which authorizes lawsuits for violations of contracts "between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." *Id*. at 16 (quoting 29 U.S.C. § 185). The Court observed that the statute of limitations for bringing a fair representation claim under the LMRA is six months from when an employee knew or reasonably should have known of a union's breach of its duty of fair representation. *Id*. at 16 (citing *Muhonen v. Cingular Wireless Emp. Servs., LLC*, 802 F. Supp. 2d 1025, 1046 (D. Minn. 2011), *aff'd,* 456 F. App'x 610 (8th Cir. 2012) (per curiam)).

10

While noting that the statute of limitations is an affirmative defense that typically is resolved on summary judgment, the Court previously concluded that Ms. Kasso's allegations undeniably pointed to conduct that occurred more than six months before she filed suit and that her allegations also left no question that she was contemporaneously aware of the union's alleged failure to fairly represent her. *Id*. at 17. The Court therefore dismissed her claim, but noted that there was at least the possibility that Ms. Kasso could re-plead this claim in a way that plausibly suggested she had only learned about certain union conduct in the six months before filing suit. *Id*.

But Ms. Kasso's SAC does not offer the Court any such allegations. Instead, the SAC again reveals that the union's alleged failure to fairly represent her occurred more than six months before she filed suit and that Ms. Kasso has been aware of the union's alleged failures since they occurred. Nothing in the SAC suggests union conduct or delayed knowledge of union conduct occurring within six months of this lawsuit.

Ms. Kasso's fair representation claim is therefore dismissed once again. *See Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, 493 F. Supp. 3d 764, 766–67 (D. Minn. 2020) ("A court may dismiss a claim as untimely if it is clear from the face of the complaint that the claim is barred by the statute of limitations.").

### Breach of Contract

Ms. Kasso also alleges for the first time a breach-of-contract claim. SAC ¶¶ 4.1–4.3, 5.1. The elements of a breach-of-contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to [plaintiff's] right to demand

performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).[5] This claim, too, is dismissed.

Here, Ms. Kasso points to a collective bargaining agreement ("CBA") between the Federation and "federal agencies." SAC ¶ 4.1. The Court will liberally construe this pleading as alleging the existence of a union contract between the Federation and MPD, organized under federal law, rather than of any contract between herself and the Federation. Ms. Kasso then points to breaches arising under the CBA that include "wrongful termination," "failure to pay wages or benefits," "breach of promotion promises," and "violation of leave polices." SAC ¶ 4.2. These allegations appear to point to conduct occurring from the city and MPD, rather than the Federation.

Taken as a whole, the Court liberally construes Ms. Kasso's factual allegations as attempting to assert a "hybrid" action under the LMRA, by which an employee may make "a claim against the employer for breach of the CBA and against the union for breach of the duty of fair representation." *Muhonen*, 802 F. Supp. 2d at 1031 (citing *Scott v. United Auto.*, 242 F.3d 837, 838 (8th Cir. 2001)); *see also Scott*, 242 F.3d at 839 (noting that "[a]lthough the contractual remedies under a collective bargaining agreement between the employer and union ordinarily are exclusive, if the union has sole power under the contract to utilize the higher stages of a grievance procedure and wrongfully refuses to process a

---

[5] The substantive law of Minnesota applies to Ms. Kasso's supplemental state law claims for breach of contract, negligence, and fraud. *See Anderson v. City of Minneapolis*, No. 16-cv-04114 (SRN/FLN), 2018 WL 1582262, at *11 (D. Minn. Mar. 30, 2018).

grievance, the employee may bring a hybrid action" against both employer and union under the LMRA). However, even assuming that Ms. Kasso has adequately stated such a "hybrid claim" in her pleadings, this claim would be subject to the same six-month statute of limitations as a claim for breach of the duty of the fair representation. *See Scott*, 242 F.3d at 839 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–70 (1983)).

As explained above, it is plain from the face of the SAC that the conduct at issue in this case happened more than six months before the filing of this suit and that Ms. Kasso's knowledge of any breach was contemporaneous with the breach. Therefore, Ms. Kasso's claim for breach of contract under the CBA is likewise dismissed. *See Jorgenson v. Qwest Corp.*, No. 07-cv-3979 (JMR/FLN), 2008 WL 2102206, at *4 (D. Minn. May 16, 2008) ("[E]ven if the Court construes plaintiff's breach of contract claim as an adequately-pled, [LMRA] hybrid claim, the claim must still be dismissed for failure to comply with the statute of limitations.").

**Negligence**

Ms. Kasso also newly alleges negligence by the Federation, largely related to the same conduct that gives rise to her Title VII claim. Under Minnesota law, "[t]o plead a negligence claim, a plaintiff must allege facts plausibly showing (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty was the proximate cause of the injury." *Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia*, 705 F. Supp. 3d 898, 910–11 (D. Minn. 2023) (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995)). This claim is also dismissed.

13

Ms. Kasso's negligence claim is very brief and only points to a single alleged incident in 2019 in which the Federation president is said to have "neglected to provide assistance" to restore Ms. Kasso's health insurance during a time of medical need. SAC ¶ 5.2. This allegation, on its own, does not suffice to establish the existence of a duty of care in the Federation, which is a threshold question for any negligence claim "because a defendant cannot breach a nonexistent duty." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 77 (Minn. 2020). But assuming without deciding that Ms. Kasso's surrounding pleadings establish the existence of an overarching *contractual* duty of care imposed upon the Federation to represent Ms. Kasso's employment interests, this causes another problem: "When a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence." *Fairview Health Servs.*, 705 F. Supp. 3d at 911 (quoting *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012)).

The Court has carefully reviewed and liberally construed Ms. Kasso's SAC for anything that would plausibly allege a duty of care in the Federation arising from anything other than a contract. Finding nothing of that nature, her negligence claim is dismissed.

### Fraud

Ms. Kasso also raises a fraud claim against the Federation.

> To state a claim for fraud under Minnesota law, [a plaintiff] must allege: (1) a false representation by [the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the plaintiff] to act in reliance thereon;

14

>(4) that the representation caused [the plaintiff] to act in reliance thereon; and (5) that [the plaintiff] suffered pecuniary damages as a result of the reliance.

*Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 591 (D. Minn. 2014) (citing *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 368 (Minn. 2009)). Once more, this claim is dismissed.

To properly plead a fraud claim, a plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Zimmerschied*, 49 F. Supp. 3d at 591–92 (quoting *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012)).

The paragraph of the SAC specifically alleging fraud is the same paragraph from which this Court has drawn to find a cognizable Title VII claim. *See* SAC ¶ 5.3. This paragraph plainly fails under Rule 9(b). The concise factual allegations that the Court has determined are sufficient to state a claim of Title VII discrimination are not simultaneously adequate to sustain a claim of fraud. Indeed, nothing about this paragraph suggests a fraud claim, let alone with the specificity required for one. Among other things, Ms. Kasso fails to identify *who*, specifically, she believes defrauded her at the Federation; nor does she explain *how* the Federation's allegedly discriminatory failures of representation also

15

represent a fraud against her; and finally, her multi-year time windows are too broad to give notice to the Federation as to *when* the alleged fraud against her occurred. In short, Ms. Kasso's pleadings concerning the Federation's failure to come to her assistance in her employment dispute with the MPD are painted too broadly to satisfy the heightened pleading requirements that attach to a claim of fraud.

## IV.   ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendant's Motion to Dismiss the Second Amended Complaint (ECF 59) is **GRANTED in part and DENIED in part**;

2. The Motion is **GRANTED** to the extent that Ms. Kasso's breach of the duty-of-fair-representation, breach-of-contract, fraud, and negligence claims are **DISMISSED without prejudice**.

3. The Motion is otherwise **DENIED**.

Date: May 9, 2025                                             *s/ Katherine M. Menendez*
                                                              Katherine M. Menendez
                                                              United States District Judge