UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leila Kasso, <br><br> Plaintiff, <br><br> v. <br><br> Police Officers' Federation of Minneapolis, <br><br> Defendant. | Case No. 23-cv-2777 (KMM/DLM) <br><br><br> **ORDER ON PLAINTIFF'S SECOND MOTION TO COMPEL RULE 45 SUBPOENA** |

This matter is before the Court on pro se Plaintiff Leila Kasso's Second Motion to Compel Rule 45 Subpoena. (Docs. 103, (Motion), 105 (Memorandum).) Ms. Kasso seeks to compel the production of documents and electronically stored information ("ESI") from non-party City of Minneapolis ("the City"). The City opposes Ms. Kasso's subpoena, and argues that her motion should be denied. (Docs. 113 (Memorandum in Opposition), 112 (Declaration).) The matter is now fully submitted and the motion is ripe for decision. For the reasons explained below, the Court grants in part and denies in part Ms. Kasso's Second Motion to Compel Rule 45 Subpoena (Doc. 103).

## BACKGROUND

Pro se Plaintiff Leila Kasso is a former Minneapolis Police officer who alleges discriminatory treatment on the basis of race and sex by the Police Officers' Federation of Minneapolis ("the Federation") in violation of Title VII. (Doc. 58.) Ms. Kasso filed her original complaint against the Federation on September 8, 2023, alleging many causes of action, including violations of Title VII, violations of the Americans with Disabilities Act

1

("ADA"), age discrimination, defamation, retaliation, and other claims. (Doc. 1.) Along with the Federation, she named as defendants in her original complaint the City of Minneapolis and the City of Minneapolis Police Department ("MPD"). (*Id.*) On January 5, 2025, Ms. Kasso, filed a Second Amended Complaint against the Federation only, effectively dismissing the City and MPD from the lawsuit. (Doc. 58.)[1]

On January 19, 2025, the Federation moved to dismiss Ms. Kasso's Second Amended Complaint. (Doc. 59.) The Court granted in part and denied in part that Motion (Doc. 87.) Relevant here, Judge Menendez dismissed all but Plaintiff's Title VII claim for race and sex discrimination, finding that Ms. Kasso had pled facts sufficient to state a "straightforward claim that the Federation both undermined her employment with the MPD after a medical episode and then failed to assist her in re-securing her employment in the manner it would have done for a white, male officer—even one facing far more serious employment disputes." (*Id.* at 9.)

Once discovery began, Ms. Kasso propounded a Rule 45 subpoena *duces tecum* on the City on July 22, 2025. (Doc. 104-4.) The City timely objected to Plaintiff's subpoena on August, 5, 2025. (Doc. 112-1.) [2] The record reflects that attempts to meet-and-confer in good-faith pursuant to Local Rule 7.1 were unsuccessful. (*See generally* Doc. 104-7.)

---

[1] However, Ms. Kasso maintains an ongoing parallel suit against the City (*Kasso v. City of Minneapolis et al.*, 23-cv-2782) broadly arising from the same set of circumstances.
[2] Ms. Kasso's contention that the City has waived its right to object lacks merit. Rule 45 directs that an objection "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).
Ms. Kasso served the City with a subpoena on July 22, 2025. (Doc. 104-4.) The City objected on August, 5, 2025—within fourteen days of service of Ms. Kasso's subpoena. (Doc. 112-1.) The City therefore timely objected to Ms. Kasso's subpoena.

Ms. Kasso's subpoena, which includes 23 requests, seeks a wide range of documents, ESI, and other information that Plaintiff alleges are relevant to her original bevy of claims against the Federation, even though the Court dismissed the overwhelming majority of those claims. (*See generally* Doc. 104-3.) In her Memorandum in Support of her Motion to Compel, Ms. Kasso generally contends that the City's refusal to produce discovery threatens her ability to prepare for trial. (Doc. 105 at 1.) She makes few directed arguments in support of her Motion, but does argue at length that the City's objections are without merit. (*See generally* Doc. 105.)

The City objects to each of Plaintiff's requests. Primarily, the City objects because, from its perspective, Ms. Kasso's requests are largely irrelevant to her Title VII claim. But even where her requests are marginally relevant, the City argues that her requests are unduly burdensome on a non-party. The City further contends that Plaintiff's Motion should be denied because she has "wasted" the Court's and counsel's time by using fictitious caselaw likely generated by Artificial Intelligence ("AI") and because she has "refused" to meet and confer according to Local Rule 7.1. (Doc. 113 at 1.) Ultimately, given the breadth and depth of discovery Ms. Kasso seeks, the City urges the Court to understand her Motion as an attempt to contravene the discovery limitations in her parallel case against the City and deny it accordingly. (*Id*.)

# ANALYSIS

## I. PLAINTIFF'S SECOND MOTION TO COMPEL RULE 45 SUBPOENA IS GRANTED IN PART AND DENIED IN PART.

Rule 26 of the Federal Rules of Civil Procedure establishes that the scope of discovery in a civil case is limited to all non-privileged information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). And it is the party that seeks discovery who must make a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). If that occurs, then "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit." *Id.* Along with these constraints, a district court "must limit discovery if it determines that it can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Johnson Tr. of Operating Eng'rs v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 524-25 (8th Cir. 2020).

When a party wishes to compel a nonparty to produce discovery in a lawsuit, Rule 45 provides that a nonparty may be commanded by subpoena to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a). But "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). When a non-party is subpoenaed, the concern for burden under Rule 45(d)(1) carries "special weight" in a court's analysis. *In re Pork Antitrust Litigation*, No. 18-cv-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. March 31, 2022) ("Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs."). This concern reflects the reality that non-parties, unlike parties to a civil action, neither anticipate nor elect to expose themselves to discovery processes. When a Rule 45 subpoena imposes undue burden on a non-party or requests irrelevant information, the Court must quash or modify that subpoena. *Id.*; Fed. R. Civ. P. 45(d)(3)(A)(iv).

5

Ms. Kasso propounds 23 distinct requests upon the City, a non-party to this action. The Court considers each of Ms. Kasso's requests, balancing the considerations set out by Rule 26 and Rule 45 of the Federal Rules of Civil Procedure.

**A.   Ms. Kasso's Motion to Compel is Denied as to Requests No. 1-7, 13-15.**

In these requests, Ms. Kasso seeks "ESI and Phone Records" for nine non-party City employees: John Laluzerne, Thomas Schmid, Henry Halvorson, David Garman, Bob Kroll, Eric Hagle, Destiny Xiong, Erin Grabowski, and Medaria Arradondo. (Doc. 104-3 at 3-9.) She requests the work cell phone number associated with each individual; all text messages sent or received by each individual on any work cell phone or device; a log of all numbers called and received by each individual on any work cell phone or device; and all City of Minneapolis email data from the named individuals' official email account, including content and attachments. (*Id.*) While the temporal scope of her requests varies per request, Request Nos. 1, 2, 3, 7, 13, and 14 seek documents and ESI from before the year 2018.[3] (*See* Doc. 104-3 at 3,4, 6-9.) As to Request No. 15, Ms. Kasso seeks only contact details for a former MPD Lieutenant Richard Jackson. (Doc. 104-3 at 10.)

Ms. Kasso contends that the information she seeks in these requests is relevant to her Title VII claim against the Federation, as well as to her original host of claims dismissed by the Court. The City objects, noting that these requests are not relevant to show that the Federation selectively assists white male officers; that the requests are not proportional to the needs of the case; and that the requests are not fashioned to limit burden

---

[3] The Court has determined that the relevant temporal scope for Plaintiff's Title VII claim is likely 2018 to 2020. (Doc. 87 at 10.)

6

on a non-party. In support of its last point, the City asserts that producing the email data from these individuals' accounts alone would amount to a more than a million email records. (Doc. 113 at 5.)

As an initial matter, the Court reiterates that Rule 45 subpoenas *duces tecum* govern the production of "documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(B). Ms. Kasso's requests for non-party phone numbers and addresses are not requests for documents, ESI, or a tangible things. While Rule 33 may command that sort of information (though only against parties), Rule 45 does not. Accordingly, the Court denies these requests to the extent Ms. Kasso seeks information that lies beyond the ambit of Rule 45. Request No. 15 is denied fully on this basis.

Secondly, these requests are not relevant. In almost every request, Ms. Kasso seeks discovery related to claims that are no longer a part of her lawsuit. But Rule 26 makes discoverable only nonprivileged information that is relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). In short, Ms. Kasso's requests must be relevant to her operative claim, that is, her Title VII claim against the Federation. Yet Ms. Kasso repeatedly invokes her dismissed claims as the basis of relevance in these requests. Ms. Kasso's requests are therefore denied insofar as they invoke her dismissed claims. The Court also denies these requests where they seek information beyond the relevant temporal scope determined by the Court.

To the extent that Ms. Kasso does seek information relevant to her Title VII claim, these requests must be denied because they run afoul of Rule 26's proportionality requirement. In seeking *all* email, text, and phone records related to these individuals

without limitation, Ms. Kasso requests a sea of information in which she would find little to do with her claim against the Federation. No doubt, these requests encompass *some* relevant information: casting so wide a net, how could one not catch a few fish? But as written, the Court cannot grant these requests. Plaintiff's requests are simply too broad, and their relevance too meager, to satisfy Rule 26's proportionality requirement.

The overbreadth of Ms. Kasso's requests marks a failure to reduce the burden on the City as required by Rule 45. As the City observes, compliance with these requests would compel a non-party to produce, review, and redact more than a million emails alone. (Doc. 112 at 5.) Attention to the "special weight" that burden on non-parties merits in the Rule 45 analysis, and to the foregoing considerations, calls for denial of these requests.

**B.    Ms. Kasso's Motion to Compel is Denied as to Requests No. 8 and No. 20.**

In Request No. 8, Ms. Kasso compels the production of Visinet Case Records and ESI concerning her bicycle accident on May 20, 2018. (Doc. 104-3 at 7.) Plaintiff argues only that these records are relevant to "the reported basis of the City's claim of defense." (*Id.*)

Through Request No. 20, Plaintiff seeks comprehensive information about her insurance coverage by Medica Insurance during her employment with the City of Minneapolis. (Doc. 104-3 at 13.) She states that this information is relevant to show that the City "knew in November 30, 2018 they had no intention to reinstate Plaintiff." (*Id.*)

Although Ms. Kasso declares otherwise (*See* Doc. 104-3 at 1), the City is *not* a defendant to this action. It is a non-party. Because it is not a defendant, it has no defense that could provide a basis of relevance under Rule 26. What the City knew, and when,

8

may be relevant to Ms. Kasso's suit against the City, but not her suit against the Federation. The Court denies these requests.

### C. Ms. Kasso's Motion to Compel is Denied as to Request No. 9.

In this request, Ms. Kasso seeks "Court and Arbitration Case Numbers (Career to Present): for John Laluzerne, Eric Hagle, Bob Kroll, David Garman, Sherry Appledorn, Troy Carlson, David O'Conner." (Doc. 104-3 at 7.) Ms. Kasso states that these records are relevant to show how the named individuals enjoyed "decades of benefits from the Federation. . . yet the Federation failed to assist the Plaintiff. . ." (*Id.*) The City objects. It argues that Ms. Kasso's request should be understood as an interrogatory directed at a non-party; that court records are publicly available and compelling production from a non-party imposes an undue burden; and lastly that the Federation is better equipped to supply discovery related to labor arbitrations. (Doc. 113 at 24).)

As the City correctly notes, Plaintiff's request for the *numbers* related to certain court cases and arbitration records constitutes an interrogatory properly governed by Rule 33, which cannot be propounded against a non-party. In any event, this request would unduly burden a non-party. Court case numbers are publicly available and do not require use of a Rule 45 subpoena. Arbitration records, though not publicly available, are more appropriately sourced from the party to this action, the Federation. For these reasons, the Court denies this request.

### D. Ms. Kasso's Motion to Compel is Granted as to Request No. 10.

In this request, Ms. Kasso moves the Court for an Order compelling the production of disciplinary files held by City related to Bob Kroll, David Garman, John Laluzerne,

9

Thomas Schmid, Pete Brazaeu, Heather Jorges, Sherry Appledorn, and Sherral Schmidt. (Doc. 104-3 at 8.) Ms. Kasso further requests that the City produce these files in their native format, with all associated metadata, transcripts, and outcomes. (Doc. 104-3 at 7-8.) Among other claims, she asserts that these files are relevant to show that the Federation discriminates by selectively assisting white, male officers—such as the named officers here—in workplace disputes. (Doc. 104-3 at 7-8.) The City argues that the request should be denied because Ms. Kasso seeks confidential information that harms privacy interests; because the request is not time-limited; and because Ms. Kasso makes no showing that the named individuals were similarly situated to herself. (Doc. 113 at 26.)

     Balancing both parties' positions, the Court grants this request as to the years 2018 through 2020. In a Motion to Compel, Ms. Kasso need not prove her case in full—she only needs to meet the threshold showing set out in Rule 26 and 45. Here, Ms. Kasso has made that showing. At this point in litigation, Ms. Kasso need not prove that these officers were similarly situated to herself for the purposes of her Title VII claim. The Court also determines that the privacy interests are not outweighed by Plaintiff's interest in these files. And although a non-party, the City is best situated to provide the requested documents, and the burden imposed is not undue.[4] Accordingly, Plaintiff's Motion to Compel is granted as to Request No. 10 to the extent Ms. Kasso seeks disciplinary files for the named individuals from the years 2018 through 2020.

---

[4] While the City frequently objects to the format of production requested by Ms. Kasso, it does not do so here.

**E.      Ms. Kasso's Motion to Compel is Denied as to Request No. 11.**

Ms. Kasso next requests a list of "dollar amounts" the City has paid out to a list of nine named individuals "in Criminal or Civil cases due to the following officers' actions or inactions." (Doc. 104-3 at 8.) Plaintiff argues that the relevance of these files relates to "comparative analyses" on the City's payouts to white officers, to demonstrate that the City maintains employment of "mostly White male officers who repeatedly cause violations working in the City of Minneapolis and backed by the Federation." (*Id.*)

The Court denies this request. While arguably topical, a comprehensive evaluation of settlement pay-outs is not relevant to Ms. Kasso's claim against the Federation nor proportional to the needs of this case. Moreover, civil settlement records are publicly available through the City's own webpage such that Ms. Kasso does not need a Rule 45 subpoena to access the information she seeks. For these reasons, Plaintiff's request No. 11 is denied.

**F.      Ms. Kasso's Motion to Compel is Denied as to Request No. 12.**

In this request, Plaintiff seeks employment reviews of Bob Kroll and David Garman from January 1, 2005-January 1, 2009, to demonstrate, she argues, the advantages enjoyed by these two white male officers compared to the Plaintiff, a Black female. (Doc. 104-3 at 8.) Other disqualifying reasons aside, Plaintiff's request falls well outside the relevant temporal scope for her claim. Plaintiff's Motion to Compel is denied as to Request No. 12.

**G.     Ms. Kasso's Motion to Compel is Denied as to Requests No. 16, 17, 22.**

Through Request No. 16, Ms. Kasso seeks a trove of ESI and documents related to MPD officer Molly Fischer's apparent concussion, including her medical file, hospital documentation, case number, police report, medical authorization, the identity of the Federation Representative notified to assist her, and any reinstatement processes Ms. Fischer underwent to return to work. (Doc. 104-3 at 10.) Ms. Kasso states that these documents are relevant to show a "pattern and practice of discrimination." (*Id.*) The City objects, noting that this request is, essentially, a nine-part interrogatory directed toward a non-party. (Doc. 113 at 30.)

Through Request No. 17, Ms. Kasso seeks ESI related to the "Work force database for the Fourth Precinct with a copy of all shifts and departments in the Minneapolis fourth precinct from January 1, 2018, January 1, 2019 and from January 1, 2020-January 1, 2022" in order to determine the identity of the "White male officer with whom suffered [sic] a severe accident." (Doc. 104-3 at 10-11.) Plaintiff suggests this information is relevant to show how the Federation assisted this unidentified white male officer who suffered a head injury, assistance which the Plaintiff alleges she did not receive. (*Id.*) The City objects. In its Memorandum, the City explains that Workforce Director is a timekeeping and scheduling software used by the MPD. (Doc. 113 at 31). The City asks the Court to deny this request on the grounds that it unduly burdens a non-party to produce a vast amount of confidential and irrelevant data. (*Id.*)

Through Request No. 22, Ms. Kasso seeks information related to MPD's "Employee Intervention System," including the identity of individuals related to

Plaintiff's involvement in that program, and information about whether the "Plaintiff was referred to counseling or in house "police" counseling." (Doc. 104-3 at 14.) In arguing for the relevance of this request, Ms. Kasso merely states that these records will be used during trial. (*Id.*) The City objects. It writes that Plaintiff erroneously identifies MPD's Early Intervention System, a non-disciplinary program that identifies and supports struggling police officers. (Doc 113 at 36.) The City argues that Plaintiff's unrestricted request related to this program is overbroad, impinges on private personnel data, and unduly burdens a non-party. (Doc. 113 at 36.)

In these requests, Ms. Kasso seeks mere needles in haystacks of irrelevance. Ms. Kasso's requests seek reams of personal, often sensitive details about City employees without limitation. To the extent Ms. Kasso seeks a sliver of relevant information in each request, it is eclipsed by the irrelevance of the information sought and outweighed by the burden of production on a non-party. Ms. Kasso's Motion to Compel is denied as to Request Nos. 16, 17, and 22.

**H.    Ms. Kasso's Motion to Compel is Denied as to Request No. 18.**

Through this request, Plaintiff seeks her own personnel and disciplinary files in native format. (Doc. 104-3 at 11.) Ms. Kasso does not explain how this request is relevant to her Title VII claim against Federation. The City objects to this request, and adds that it has already produced this material in the parallel lawsuit. (Doc. 112 at 5.)

A Rule 45 subpoena compels the production of information to which a litigant does not have access in the interest of settling disputes. Rule 26 requires the Court to limit discovery if the discovery sought is "unreasonably cumulative or duplicative. . ." Fed. R.

Civ. P. 26(b)(2)(C). Because Ms. Kasso is already in possession of her own personnel and disciplinary files, then compelling the production of this discovery would be duplicative. *See also* Minn. Stat. § 181.961 (setting forth state-law statutory basis for personnel records review requests). Accordingly, Ms. Kasso's Motion to Compel is denied as to Request No. 18.

I.      **Ms. Kasso's Motion to Compel is Denied as to Request No. 19.**

Plaintiff's next request is two-fold. First, Ms. Kasso requests general contact information related to the Axon Body Camera Corporation "or any entity that provides body camera services to the City of Minneapolis." (Doc. 104-3 at 12.) Second, she requests body camera footage from May 20, 2018, the date of her bicycle accident. (*Id.*) She requests this information to refute claims regarding Plaintiff's medical condition made by the City officers. (*Id.*) The City objects. Among other reasons, the City represents to the Court that Ms. Kasso already possesses video footage of her bicycle accident such that she need not compel it here. (Doc. 112 at 5.)

As to Axon Body Camera's information, Ms. Kasso's request is a request for an interrogatory beyond Rule 45's purview. Moreover, the information Ms. Kasso seeks is a publicly available corporate address; filing a motion to compel the City to provide that information does little beyond giving credence to the City's complaint that Ms. Kasso has not taken steps to avoid imposing undue burdens on this nonparty. Additionally, her request for body camera footage is unnecessary. As with Request No. 18, because Plaintiff is already in possession of the body camera footage she requests, this request is denied. Accordingly, Ms. Kasso's Motion to Compel is denied as to Request No. 19.

## J.     Ms. Kasso's Motion to Compel is Denied as to Request No. 21.

Plaintiff next requests contact details for the City's email and cellphone service providers, including general corporate contact details. (Doc. 104-3 at 14.) She also requests all emails and text messages "regarding the Plaintiff from any Federation Representative to any individual from January 1, 2016, until May 20, 2020." (Doc. 104-3 at 14.) Ms. Kasso makes no relevance showing for this request.

The City objects. It argues first that this request is an interrogatory, and secondly that it is irrelevant to Plaintiff's claim against the Federation. The City further objects that Ms. Kasso's requests for emails about herself on the grounds that this request is overly broad and unduly burdensome, and would require the City to produce, review, and redact over a 1,000 emails. (Doc. 112 at 5.) The City then notes that production of all text messages related to Plaintiff would be overly burdensome because it would require the City to obtain all phone numbers and email addresses used by the Federation over four years. (Doc 114 at 35-36.)

The Court denies this request. The City correctly notes, and the Court agrees, that general contact information of the City's email and cellphone service providers are interrogatory requests beyond the ambit of Rule 45. While Ms. Kasso's requests for emails and text messages from Federation Representatives regarding herself are likely relevant, Ms. Kasso bears the burden of proving the relevance of the information she seeks. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) ("the party seeking discovery is required to make a threshold showing of relevance before production of

15

information is required."). Because Ms. Kasso has made no showing of relevance, the Court denies this request as written.

### K.  Ms. Kasso's Motion to Compel is Denied as to Request No. 23.

Plaintiff's final request seeks the production of "all ESI, documentation, notes reports, written information, medical opinions and any communications has [sic] with "Risk Management, Occupational Health Consultants, and Health and Wellness." (Doc. 104-3 at 14.) Ms. Kasso states merely that this information is relevant for use at trial. (*Id.*)

This request is denied. This request is so ambiguous as to be indecipherable. It appears to request vast stores of information with no showing of how the discovery sought is relevant to Ms. Kasso's Title VII claim.

### II.  MS. KASSO'S OTHER REQUESTS FOR RELIEF ARE DENIED IN THEIR ENTIRETY.

Along with her enumerated requests for production, Ms. Kasso asks this Court for three further forms of relief. First, she seeks a ruling that the City's objections are waived for untimely filing. (Doc. 103 at 3.) Second, she requests an award of reasonable costs and fees under Rule 37(a)(5). (*Id.*) Lastly, she requests an adverse inference instruction for evidence allegedly withheld by the City in bad faith, any other relief the Court deems just and proper. (*Id.*) The Court has already noted the basis of its denial of Ms. Kasso's first request for relief. For the following reasons, the Court denies Ms. Kasso's second and third requests for relief.

**A.    Ms. Kasso is not entitled to Attorneys' Fees or Expenses.**

Ms. Kasso seeks fees and costs from the City. If a motion to compel is granted in part and denied in part, a court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Based on the record before it, the Court concludes that expenses are unwarranted. Although the Court grants Ms. Kasso's Motion to Compel in part, the evidence of Plaintiff's good faith efforts to obtain discovery before filing of her Motion are, at best, conflicting. (*See* Doc. 112 at 1-2; Doc. 114 at 4-5.) Regardless, the City's objections to Ms. Kasso's requests are substantially justified. The City is a non-party to this action and Ms. Kasso's requests have been far-reaching, largely irrelevant, and often unduly burdensome. This is demonstrated by, among other things, the fact that Ms. Kasso's motion is granted with respect to a single request out of the 23 that are the subject of her motion. Plaintiff is strongly encouraged to review Federal Rules of Civil Procedure 45(d)(1) and 37(a)(5)(C), which contemplate the payment of fees and expenses—and apportionment of such payment—based on the merits of the motion. Here, the Court will not order payment of expenses to Ms. Kasso.

**B.    No Adverse Inference Instruction is Warranted.**

Plaintiff seeks an adverse inference instruction. An adverse inference instruction is an extreme measure to penalize and deter failures to properly preserve ESI. Fed. R. Civ. P. 37, subdiv. (e)(2). Only when a party acts "with intent to deprive another party of the information's use in the litigation" may the Court instruct the jury at trial that such evidence would be unfavorable to the party responsible for the loss. *Id*. Not only is there zero evidence the City intended to deprive Ms. Kasso of the requested information's use,

17

but also, despite Ms. Kasso's repeated assertions otherwise, the City *is not* a party to *this* litigation. Therefore, an adverse instruction against the City as a non-party makes no sense.

### III. PLAINTIFF'S CITATIONS VIOLATE RULE 11.

Finally, the Court must address Plaintiff's use of inaccurate and nonexistent caselaw consistent with irresponsible use of AI. Federal Rule of Civil Procedure 11 imposes a "personal, nondelegable responsibility" to "validate the truth and legal reasonableness of the papers filed" in an action. *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126–27 (1989). Federal courts throughout the country have reiterated the same: the use of nonexistent caselaw generated by AI represents an abdication of the duty of truthfulness and an abuse of the legal system. *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *4 (D. Minn. Jan. 10, 2025) (describing how AI-generated sources in a declaration "shatters [the declarant's] credibility with this Court"); *Mata v. Avianca, Inc.* 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."). Beyond plain violation of Rule 11, the harms of citations to fake AI-caselaw include sullying the reputation of the judiciary, wasting time, and denigrating the otherwise valid claims of litigants. *See Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023).

Ms. Kasso's use of fictitious and non-existent caselaw violates under Rule 11. Ms. Kasso has repeatedly cited to caselaw that does not exist. (*See* Doc. 103 at 2 (citing to *Klingenstein v. Pettit*, 297 F. Supp. 2d 435, 439 (S.D.N.Y 2003) which does not exist), 3,

18

(citing to *In re Application of Time, Inc.*, 1999 WL 804090, at *5 (S.D.N.Y. Oct. 6, 1999) but *In re Application of Time, Inc.* is a case from the Eastern District of Louisiana, and the quoted language appears nowhere in the case); Doc 105 at 2, (citing *Miller v. Pruneda*, 236 F.R.D. 277, 282 (N.D. Tex. 2006) but *Miller* is a 2004 case from the Northern District of West Virginia, and does not support Ms. Kasso's proposition.) She has also often cited to real cases for propositions for which they clearly do not stand. (*See* Doc. 105 at 2-3 (citing to *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 295 (2d Cir. 1979); *Andritz Sprout-Bauer, Inc., v. Beazer East, Inc.*, 174 F.R.D. 609, 631 (M.D. Pa. 1997); Doc. 102 at 3.) In doing so, Ms. Kasso has abdicated her duty of truthfulness to the Court under Rule 11, wasted time and resources, and jeopardized the integrity of her own claims and the success of her suit. The Court acknowledges the utility of AI to the pro se litigant, especially faced with steep barriers to access legal education and resources. But pro se litigants, including Ms. Kasso, are not exempt from following the substantive and procedural requirements of the law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law."). Liberal construction does not mean anything goes. And Ms. Kasso's pro se status will not protect her from the "steep consequences" that courts across the country have imposed for the use of fake, AI-generated sources. *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (referring attorney for potential discipline for use of fake, AI-generated citations in a filing); *see also Kohls v. Ellison X Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) (sanctioning attorney for including fake, AI-generated legal citations in a filing); *Kruse v. Karlan*, 692

19

S.W.3d 43, 53 (Mo. Ct. App. 2024) (dismissing appeal based on litigant's use of fake, AI-generated legal citations). The Court thus warns Plaintiff that further use of fictitious and inaccurate authorities will not be tolerated.

## ORDER

Accordingly, based on the above and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. Plaintiff Leila Kasso's Second Motion to Compel Rule 45 Subpoena (Doc. 103) is **GRANTED IN PART** and **DENIED IN PART**.

    a. Ms. Kasso's Motion to Compel is GRANTED as to Request No. 10. The City must produce any documents related to that request with 21 days of this Order.

    b. Ms. Kasso's Motion to Compel is DENIED as to all other Requests.

DATED: October 21, 2025         *s/Douglas L. Micko*
                                DOUGLAS L. MICKO
                                United States Magistrate Judge